1
2
3
4

Adam J Schwartz (SBN 251831)
e-service: adam@ajschwartzlaw.com
ADAM J SCHWARTZ, ATTORNEY AT LAW
5670 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
phone: (323) 455-4016

5

[Additional counsel appear on signature page]

6

*Attorney for Plaintiffs and the Proposed Class*

7

8
9

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

10
11
12
13
14
15
16
17
18

| TREVOR BARNES and STEPHANIE BROWN, individually and on behalf of all others similarly situated, | Case No. 4:22-cv-4299 |
|---|---|
| Plaintiff, | **COMPLAINT FOR INJUNCTION AND DAMAGES** |
| v. | |
| SUNPOWER CORPORATION, | **Class Action** |
| Defendant. | **JURY TRIAL DEMAND** |

19
20
21
22

Plaintiffs Trevor Barnes ("Mr. Barnes") and Stephanie Brown ("Ms. Brown"), by their undersigned counsel, for this complaint against Defendant SunPower Corporation ("SunPower") and their present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, allege as follows:

23

24

**I.   INTRODUCTION**

25
26
27
28

1.   Nature of Action: As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million

complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      This case involves a campaign by SunPower to market its solar services through the use of pre-recorded telemarketing calls in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (hereinafter referred to as the "TCPA"), such as a call to Ms. Brown on May 31, 2022.

3.      Moreover, SunPower made prerecorded telemarketing calls to cellular telephone numbers like Mr. Barnes', that were registered on that National Do Not Call Registry.

4.      This case is not SunPower's first time standing accused of violating the TCPA on a systematic basis. *See Fabricant v. SunPower Corporation*, 4:20-cv-00114-PJH, NDCA, San Jose Division.

## II.      PARTIES

5.      Plaintiff Barnes is an individual residing in Hawthorne, California.

6.      Plaintiff Brown is an individual residing in Lakeland, Florida

7.      SunPower is a corporation.

8.      It is a Delaware corporation.

9.      Its principal place of business is 51 Rio Robles, San Jose, California 95134, in this District.

### III.   JURISDICTION AND VENUE

10.   <u>Jurisdiction</u>: This Court has federal-question subject matter jurisdiction over Plaintiff' TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). The Court has supplemental jurisdiction over Plaintiff' CIPA claims pursuant to 28 U.S.C. § 1367 because the CIPA violations are so related to the TCPA violations—arising from the same telemarketing—as to form part of the same case or controversy.

11.   <u>Personal Jurisdiction</u>: This Court has personal jurisdiction over Defendant because: (A) they are headquartered in California; and (B) their conduct at issue was organized from their California headquarters;

12.   <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to Plaintiff' claims—namely, the direction of the illegal telemarketing from Sunrun's headquarters—occurred in this District.

13.   <u>Intradistrict Assignment</u>: Assignment to this Division is proper pursuant to Civil Local Rule 3-2(c) because a substantial part of the events or omissions that give rise to Plaintiff' claims—namely, the direction of the illegal telemarketing and illegal recording from Defendant's headquarters—occurred in San Francisco.

### IV.   FACTS

**A.   The Enactment of the TCPA and its Regulations**

14.   <u>Robocalls Outlawed</u>: Enacted in 1991, the TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1). Calls made by an ATDS or with a prerecorded or artificial voice are referred to as "robocalls" by the Federal Communications Commission ("FCC") and herein. Encouraging people to hold robocallers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

15.     <u>Rationale</u>: In enacting the TCPA, Congress found: "Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 § 2(10). Congress continued: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* § 2(12).

16.     The TCPA's sponsor described unwanted robocalls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30,821 (1991) (statement of Sen. Hollings).

17.     <u>Prior Express Written Consent</u>: The FCC has made clear that "prior express written consent" is required before making telemarketing robocalls to wireless numbers. Specifically, it ordered:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

*In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote omitted) (internal quotation marks omitted).

18.   <u>Do Not Call Registry</u>: Additionally, the TCPA outlaws unsolicited telemarketing (robocalls or otherwise) to phone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). Encouraging people to hold telemarketers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(c)(5).

**B.    Defendant's Unsolicited, Automated Telemarketing to Plaintiff Barnes**

19.   Plaintiffs are, and at all times mentioned herein were, "persons" as defined by 47 U.S.C. § 153(39).

20.   Plaintiff's residential telephone number is (323) 333-XXXX.

21.   That number has been on the National Do Not Call Registry for more than 31 days prior to June 2, 2022 and it has not been removed from the Registry since that time.

22.   Mr. Barnes uses the number for personal, residential, and household reasons.

23.   The number is not associated with any business.

24.   Plaintiff Barnes never consented to receive calls from SunPower.

25.   He never gave SunPower his phone number to Sunpower.

26.   He never did business with SunPower.

27.   SunPower called the Mr. Barnes phone number twice on June 2, 2022 offering its good or services.

28.   Mr. Barnes answered the first call and said he was not interested.

29.   The first call was from caller ID 385-398-XXXX.

30.   A later return call to that number to an entity that identified itself as Green Energy Solutions.

31.   As Mr. Barnes was annoyed that he was receiving a second illegal call after expressing his lack of interest, he played along in order to learn who was behind the calls and whose goods or services were being offered.

32.   Mr. Barnes spoke to a woman named Lia Smith, who identified herself as working for SunPower.

33.     Ms. Smith gave Mr. Barnes a call back number of 800-786-XXXX and then transferred him to the appointment department.

34.     Mr. Barnes then spoke with an individual who identified himself as Richard Gomes.

35.     Mr. Gomes stated that he wanted one of his salespeople, Patrick Hubbard, to call Mr. Barnes.

36.     On June 3, 2022 and June 4, Mr. Barnes received live calls from Patrick Hubbard appearing on the caller ID.

37.     Mr. Barnes did not answer either of those calls.

**C.     Defendant's Unsolicited, Automated Telemarketing to Plaintiff Brown**

38.     On May 31, 2022, Ms. Brown received a prerecorded phone call on her cellular telephone. Before the message played there was a pause and a click, which is indicative of an autodialed calls.

39.     The prerecorded message stated that it was Brian Lee from "solar project" and stated if interested in solar panels, press a number.

40.     In order to find our who as behind the illegal prerecorded call to her cell phone, Ms. Brown pressed the number and spoke with a woman named Sarah who gave her a call back number of 817-813-XXXX and made an appointment for June 1, 2022.

41.     Ms. Brown additionally received a confirmatory text from 510-426-XXXX and a confirmatory email from solaradvisors@sunpower.com.

42.     The ability of the caller to transfer Ms. Brown directly to Sarah at SunPower indicates that the caller either worked at SunPower or was previously authorized to the place the call by SunPower, as did the confirmatory text and email.

1

**D.    The Nuisance Created by Defendant's Automated Telemarketing**

2

43.    Before directing their automated telemarketing to them, Defendant never did

3

anything to confirm that Plaintiffs had provided prior express written consent to their

4

telemarketing, and Defendant knew or should have known that Plaintiffs had not provided prior

5

express written consent to receive telemarketing calls promoting Defendant's goods or services

6

and that illegal telemarketing was conducted on behalf of Defendant.

7

44.    The telemarketing alleged herein: (A) invaded Plaintiffs' privacy and solitude; (B)

8

wasted Plaintiffs' time; (C) annoyed Plaintiffs; (D) tied up Plaintiffs' phone lines; and (E)

9

harassed Plaintiffs.

10

**V.    CLASS ACTION ALLEGATIONS**

11

45.    <u>Cellular Telephone Class Definition</u>: Pursuant to Federal Rules of Civil Procedure

12

23(b)(2) and (b)(3), Plaintiff bring this case on behalf of two classes (each a "Class,"

13

collectively, the "Classes"). The first Class (the "Cellular Telephone Class") is defined as

14

follows: All persons in the United States to whom: (A) Defendant, any of them and/or a third

15

party acting on any of their behalf made a pre-recorded call; to a cellular telephone number;  (B)

16

using an artificial or prerecorded voice; from four years prior to the filing of the complaint to the

17

first day of trial.

18

46.    <u>DNC Class Definition</u>: The second Class (the "DNC Class") is defined as follows:

19

All persons in the United States to whom: (A) Defendant, any of them and/or a third party acting

20

on any of their behalf sent a telemarketing call; (B) to a residential (including residential cellular)

21

telephone number listed on the NDNCR for at least 31 days before at least two of such

22

communications in a 12-month period; (C) from four years prior to the filing of the complaint to

23

the first day of trial.

24

47.    <u>Exclusions</u>: Excluded from the Classes are Defendant, any entity in which

25

Defendant has a controlling interest or that has a controlling interest in Defendant, Defendant

26

legal representatives, assignees, and successors, the judges to whom this case is assigned and the

27

employees and immediate family members of all of the foregoing.

28

48.     Numerosity: The Classes are so numerous that joinder of all their members is impracticable.

49.     SunPower is among the largest solar energy companies in the United States.

50.     SunPower is publicly traded.

51.     Commonality: There are many questions of law and fact common to Plaintiffs and members of the Classes. Indeed, the very feature that makes Defendant's conduct so annoying— its automated nature—makes this dispute amenable to classwide resolution. These common questions of law and fact include, but are not limited to, the following: (A) whether the calls were dialed *en masse* by a pre-recorded message; (B) whether Defendant's desire to sell solar goods and services constitutes an "emergency" within the meaning of the TCPA; (C) whether Defendant had a pattern and practice of failing to obtain prior express written consent from people to whom it directed telemarketing; (D) whether Defendant had a pattern and practice of failing to remove numbers on the NDNCR from its telemarketing lists; and (E) whether Defendant's violations of the TCPA were knowing or willful.

52.     Typicality: Plaintiffs' claims are typical of the claims of the Classes. Plaintiffs' claims and those of the Classes arise out of the same course of conduct by Defendant and are based on the same legal and remedial theories.

53.     Adequacy: Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have retained competent and capable counsel experienced in TCPA class action litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so. The interests of Plaintiffs and their counsel are aligned with those of the proposed Classes.

54.     Superiority: The common issues arising from this conduct that affect Plaintiffs and members of the Classes predominate over any individual issues, making a class action the superior means of resolution. Adjudication of these common issues in a single action has important advantages, including judicial economy, efficiency for Class members and classwide *res judicata* for Defendant. Classwide relief is essential to compel Defendant to comply with the TCPA. The interest of individual members of the Classes in individually controlling the

prosecution of separate claims against Defendant is small because the damages in an individual action (up to $1,500 per violation) are dwarfed by the cost of prosecution.

## VI.    FIRST CLAIM FOR RELIEF
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)—Prerecorded Calls to Cellular Phones On Behalf of Plaintiff and the Cellular Telephone Class--Plaintiff Brown)**

55.     Plaintiff Brown realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

56.     Defendant and/or its affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls to the cellular telephone numbers of Plaintiff and members of the Cellular Telephone Class using an artificial or prerecorded voice without prior express written consent.

57.     Plaintiff Brown and members of that Class are entitled to an award of $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

58.     Plaintiff Brown and members of that Class are entitled to an award of up to $1,500 in damages for each such knowing and/or willful violation. 47 U.S.C. § 227(b)(3).

59.     Plaintiff Brown and members of that Class are also entitled to and do seek an injunction prohibiting Defendant and/or its affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls to any cellular telephone number using an artificial or prerecorded voice without prior express written consent of the receiving party.

## VII.    SECOND CLAIM FOR RELIEF
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)—Telemarketing) On Behalf of Plaintiff Chapman and the DNC Class—Plaintiff Barnes)**

60.     Plaintiff Barnes realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

61.     Defendant and/or its affiliates or agents violated the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2), by placing multiple unsolicited telemarketing calls within a 12-month period to the residential (including residential cellular) telephone numbers of Plaintiff Chapman and members of the DNC Class even though those numbers had been listed on the NDNCR for at least 31 days.

62.     Plaintiff Barnes and members of that Class seek an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

63.     Plaintiff Barnes and members of that Class are entitled to and seek an award of up to $1,500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

64.     Plaintiff Barnes and members of that Class are also entitled to and do seek an injunction prohibiting Defendant and/or its affiliates and agents from violating the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2), by placing unsolicited telemarketing calls to any telephone numbers listed on the NDNCR for at least 31 days.

## VIII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of all members of the Classes, pray for judgment against Defendant as follows:

A.     Certification of the proposed Classes;

B.     Appointment of Plaintiffs as representative of their respective Classes;

C.     Appointment of the undersigned counsel as counsel for the Classes;

D.     A declaration that actions complained of herein violate the TCPA;

E.     An order enjoining Defendant and its affiliates, agents and related entities from engaging in the conduct set forth herein;

F.     An award to Plaintiffs and their respective Classes of damages, as allowed by law;

G.     Leave to amend this Complaint to conform to the evidence presented at trial; and

H.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

## IX.     DEMAND FOR JURY

Plaintiff demand a trial by jury for all issues so triable.

## X.     SIGNATURE ATTESTATION

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from each of its other signatories.

///

1  RESPECTFULLY SUBMITTED AND DATED this 25th day of July, 2022.

2

3  By: */s/ Adam J Schwartz*

4  Anthony I. Paronich, *Pro Hac Vice Forthcoming*
5  anthony@paronichlaw.com
   PARONICH LAW, P.C.
6  350 Lincoln Street, Suite 2400
   Hingham, Massachusetts 02043
7  Telephone: (617) 738-7080
   Facsimile: (617) 830-0327
8

9  Edward A. Broderick, *Pro Hac Vice*
   *Forthcoming*
10 ted@broderick-law.com
   BRODERICK LAW,  P.C.
11 176 Federal St., 5th Floor
   Boston, Massachusetts 02110
12 Telephone: (617) 738-7080
   Facsimile: (617) 830-0327
13

14 Andrew W. Heidarpour, *Pro Hac Vice*
   *Forthcoming*
15 aheidarpour@hlfirm.com
   HEIDARPOUR LAW FIRM, PPC
16 1300 Pennsylvania Avenue NW, 190-318
   Washington, DC 20004
17 Telephone: (202) 234-2727
18

19 *Attorneys for Plaintiff and the Proposed Classes*

20

21

22

23

24

25

26

27

28